1  **BURSOR & FISHER, P.A.**
   L. Timothy Fisher (State Bar No. 191626)
2  Jenna L. Gavenman (State Bar No. 348510)
   1990 North California Blvd., Suite 940
3  Walnut Creek, CA 94596
   Telephone: (925) 300-4455
4  Facsimile:  (925) 407-2700
   E-mail: ltfisher@bursor.com
5          jgavenman@bursor.com

6  *Attorneys for Plaintiff*

7

8                **UNITED STATES DISTRICT COURT**

9              **NORTHERN DISTRICT OF CALIFORNIA**

10

11 | JOSE MARQUEZ, individually and on behalf of | Case No.
12 | all others similarly situated,

13 |                                  Plaintiff, | **CLASS ACTION COMPLAINT**

          v.

14                                              | <u>JURY TRIAL DEMANDED</u>

15 | GOODRX HOLDINGS, INC., META
   | PLATFORMS, INC., GOOGLE LLC, and
16 | CRITEO CORP.,

17 |                                  Defendants.

18

19

20

21

22

23

24

25

26

27

28

---
CLASS ACTION COMPLAINT – JURY TRIAL DEMANDED

1  Plaintiff Jose Marquez ("Plaintiff") brings this action on behalf of himself and all others

2  similarly situated against Defendants GoodRx Holdings, Inc. ("GoodRx"), Meta Platforms, Inc.

3  ("Meta"), Google LLC ("Google"), and Criteo Corp. ("Criteo") (collectively, "Defendants").

4  Plaintiff makes the following allegations pursuant to the investigation of his counsel and based

5  upon information and belief, except as to allegations specifically pertaining to himself, which are

6  based on personal knowledge.

7  **NATURE OF THE ACTION**

8  1.  This is a class action lawsuit brought on behalf of all California residents who have

9  accessed and used the GoodRx website, www.goodrx.com (the "GoodRx Website"), and the

10  GoodRx mobile applications (the "GoodRx Apps") (collectively, the "GoodRx Platform"), a

11  platform that Defendant GoodRx owns and operates.

12  2.  Defendant GoodRx aids employs, agrees, and conspires with Defendants Meta,

13  Google, and Criteo to intercept communications sent and received by Plaintiff and Class Members,

14  including communications containing protected medical information.  Plaintiff brings this action

15  for legal and equitable remedies resulting from these illegal actions.

16  3.  Founded in 2011, GoodRx is an American healthcare company based in Santa

17  Monica, California, that operates a telemedicine platform and a free-to-use website and mobile app

18  that track prescription drug prices in the United States and provide cheap drug coupons for

19  discounts on medications.  In doing so, GoodRx checks more than 75,000 pharmacies in the United

20  States for the best options for its users.  In 2021, GoodRx had over $745 million in revenue.

21  4.  GoodRx's services are available through the GoodRx Platform.  To access

22  GoodRx's services, users must disclose personal and health information to the GoodRx Platform

23  and create an account.  GoodRx collects this information from users themselves and other

24  information from pharmacy benefit managers confirming when a consumer purchases a medication

25  using a GoodRx coupon.  Since January 2017, more than 55 million consumers have visited or

26  used GoodRx's website or mobile apps.

27  5.  GoodRx offers prescription drug discounts by gathering current prices and discounts

28  and providing users with prescription coupons.  Prescription discounts are available to users who

provide GoodRx with the desired medication name and select a local pharmacy.  Users who have provided the relevant information will be able to present a custom GoodRx coupon at checkout to receive their discount.  GoodRx then retains the consumer's record of purchase, and receives a portion of a fee that pharmacies pay to companies that manage such prescription drug benefits. This record contains the user's name, date of birth, and information about the prescription filled.

6.     GoodRx additionally offers "GoodRx Gold," which is a premium membership program that provides users with further savings on prescription drugs and healthcare services for a monthly or annual fee.  GoodRx Gold users can also use this service to track their medication purchase history, including the medication name, purchase date, dosage, pharmacy, and prescriber. GoodRx Gold requires users to create an account by providing personal information including their name, email address, street address, phone number, date of birth, and credit card information.

7.     GoodRx also advertises, distributes, and sells telehealth services, branded as "GoodRx Care" and "HeyDoctor."  These services are only offered to users who provide further personal information, including their name, email address, phone number, biological sex, and current address.  Users must then select the type of treatment they are seeking, such as urinary tract infection, erectile disfunction, anxiety, depression, acne treatment, birth control, or short-term medication refills.  Depending on the treatment or the prescription sought, users are required to either complete an online consultation and enter information about their symptoms and medication history, or schedule a visit with a provider.  Payment information must be provided for these services.

8.     When a medical professional prescribes a medication during a telehealth appointment through GoodRx Care, GoodRx is able to prompt the user to fill the prescription using a GoodRx discount coupon, allowing GoodRx to market and benefit from both of its service platforms at once.

9.     Since at least 2017, GoodRx has promised its users that it would share their personal information, including personal health information, with limited third parties and only for limited purposes.  GoodRx assured consumers that it would restrict third parties' use of such information and that it would never share personal health information with advertisers or other third parties.

GoodRx routinely collects users' personal and health information and prompts users to provide their email address or phone number to access electronic coupons and refill reminders.

10.     GoodRx's privacy policies promise to safeguard users' data.  Between October 2017 and March 2019, GoodRx's policy stated that "we never provide advertisers or any other third parties any information that reveals a personal health condition or personal health information." GoodRx further promised that it would only use personal information in "limited cases," such as to fulfill a user's request for a specific prescription coupon.  GoodRx even went a step further to assure customers that when "we do disclose your personal information in conjunction with your specific medical information, GoodRx takes steps such that these third parties are subject to confidentiality obligations."

11.     Indeed, Doug Hirsch, GoodRx's co-CEO, confirmed via tweet in December 2019 that GoodRx would protect personal data: "People can use GoodRx without giving us any information.  Any information we do receive is stored under the same guidelines as any health entity."

12.     Health entities are regulated under the Health Insurance Portability and Accountability Act ("HIPPA"), which restricts the use of personal health information and electronic personal health information.  Relevant to this case, HIPPA requires the user's authorized consent in writing before an entity can share personal information with third parties.  GoodRx's HeyDoctor website prominently displayed a HIPPA seal, seemingly advertising that it complied with HIPPA.

13.     Despite GoodRx's own policies against sharing users' sensitive information, and public statements from its management that GoodRx ensures safeguarding of the same information, GoodRx repeatedly violated its promises to users by sharing sensitive user information with third-party advertising companies and platforms like Meta (formerly Facebook), Google, and Criteo (collectively, "Tracking Defendants"), without providing notice to its users or seeking their consent.  The information shared with these third parties included GoodRx's users' prescription medications, personal health conditions, contact information, and unique advertising and persistent identifiers.  GoodRx permitted these third parties—some of the most prominent social media

companies in the United States—to use and profit from the information for their own business purposes.

14.     By incorporating Tracking Defendants' tracking technology, including tracking pixels and software development kits ("SDKs"), on the GoodRx Platform, Tracking Defendants knowingly and intentionally intercepted Plaintiff and Class members' personal health information, including information related to individual medical conditions, symptoms, and prescriptions communicated through the GoodRx Platform.

15.     This information was neither aggregated nor deidentified, and the Tracking Defendants were not prohibited from using this information for their own benefit.  The Tracking Defendants did in fact use this information for their own purposes, including to allow GoodRx to advertise on their respective platforms using GoodRx users' health data.

16.     Plaintiff Jose Marquez provided his personal information, including health data relating to his medical history and prescriptions to GoodRx with the expectation that this information would remain confidential and private.

17.     Defendants' interception and disclosure of users' private information without consent constitutes an extreme invasion of Plaintiff's and Class members' privacy.  GoodRx's repeated, unauthorized disclosures of users' personal and health information have revealed extremely intimate and sensitive details about its own users that could be linked to—or used to infer information about—chronic physical or mental health conditions, medical treatments and treatment choices, life expectancy, disability status, information relating to parental status, substance addiction, sexual and reproductive health, sexual orientation, and other highly sensitive and personal sets of information.  Plaintiff brings this action for legal and equitable remedies resulting from these illegal actions.

## PARTIES

18.     Plaintiff Jose Marquez is a California resident and citizen who lives in Salinas, California.  Plaintiff signed up for a GoodRx Gold subscription membership in 2022, and used Defendant's services to obtain discount coupons for his prescription medications.  During the time Plaintiff used the GoodRx Platform, he maintained social media accounts with Facebook and

Instagram, and multiple accounts with Google, including Gmail and Google Maps. Plaintiff used the same device to access the GoodRx Platform that he used to access his accounts with Facebook, Instagram, Gmail, and Google Maps. To obtain discount coupons from GoodRx for his prescription medications, Plaintiff was required to enter his name, email address, birthdate, and payment information to acquire the GoodRx Gold subscription membership plan. With his account, Plaintiff was able to use his GoodRx Gold for discounts on his prescription medications. When Plaintiff used the GoodRx Platform, the information he entered to obtain his discounts was disclosed by GoodRx and intercepted by Meta, Google, and Criteo, including his personal identifying information, prescription requests, and other activity across the GoodRx Platform. Plaintiff did not consent to the sharing and interception of his data, or the use of this information by Defendants. Plaintiff is interested in using GoodRx's services again in the future, but has no practical way to know whether his information will be adequately protected from disclosure and interception.

19.    Defendant **GoodRx Holdings, Inc.** is a Delaware corporation with its principal place of business located in Santa Monica, California. GoodRx does business throughout California. Beginning in at least 2017, GoodRx violated the privacy promises it made to its users by sharing information with advertising platforms, including Facebook, Google, and Criteo, about users' prescription medications or personal health conditions, or that users were seeking medical treatment for specific health conditions, along with users' personal contact information and/or persistent identifiers. GoodRx did so without notice to users, and without obtaining consent, despite repeated promises that it would never do such a thing.

20.    Defendant **Meta Platforms, Inc.** is a Delaware corporation with its principal place of business located in Menlo Park, California. Meta does business throughout California. Meta created tracking tools, including automated web beacons called tracking "pixels" and other automated trackers called "Software Development Kits" ("SDKs"), that collect and send data to third parties so that they can provide advertising, data analytics, or other business services to the owner of the website or mobile app. The information sent can include users' contact information, persistent identifiers, location information, and "Events Data," which is information about users'

activities while using a website or mobile app. Meta, as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the website or mobile application that incorporated this technology. Meta at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Meta's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

21. Defendant **Google LLC** is a Delaware limited liability company with its principal place of business located in Mountain View, California. Google does business throughout California. Google, as an established advertising company, and as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the GoodRx Platform that incorporated its technology. Google at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Google's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

22. Defendant **Criteo Corp.** is a Delaware corporation with its principal place of business located in New York, New York. Criteo does business throughout California. Criteo, as the creator of its SDK and tracking pixel, knew that it intercepted users' interactions on the GoodRx Platform that incorporated its technology. Criteo at all times knew that the incorporation of its software into the GoodRx Platform would result in its interception of identifiable health information and other sensitive data. Thus, Criteo's conduct was intentional despite knowing the privacy violations it caused to Plaintiff and Class members by allowing the incorporation of its software on the GoodRx Platform.

23. Defendants Meta, Google, and Criteo (collectively, "Tracking Defendants") developed their respective tracking technologies for the express purpose of collecting data from users for, among other things, marketing, analytics, and advertising purposes. GoodRx knew at the time it incorporated the Tracking Defendants' software into the GoodRx Platform that it would result in the disclosure and interception of users' data that exists on the GoodRx Platform,

including personal identifying information, personal health histories, prescription records and requests, and other identifiable information, by virtue of how the technologies function.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, is a citizen of a state different from Defendants.

25.     This Court has personal jurisdiction over the parties because Plaintiff resides in California, is a citizen of California, and submits to the jurisdiction of the Court, and because Defendants have, at all times relevant hereto, systematically and continually conducted business in California, including within this District, and/or intentionally availed themselves of the benefits and privileges of the California consumer market through the promotion, marketing, and sale of their products and/or services to residents within this District and throughout California. Additionally, Plaintiff purchased his GoodRx membership from Defendant GoodRx while in California.

26.     Pursuant to U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Also, Plaintiff resides in this District and purchased Defendant GoodRx's Gold membership in this District. Moreover, Defendants systematically conduct business in this District and throughout the State of California, and Defendant GoodRx sold the membership to Plaintiff and Class Members in this State and District.

**FACTUAL ALLEGATIONS**

**A.     Background of the California Information Privacy Act ("CIPA")**

27.     The CIPA prohibits aiding or permitting another person to willfully—and without the consent of all parties to a communication—read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from or received at any place within California.

28.     To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,
> Or
>
> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,
> Or
>
> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,
> Or
>
> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

29.     Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the internet, and email. *See Matera v. Google Inc*., 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc*., 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' internet browsing history).

30.     Under Cal. Penal Code § 637.2, Plaintiff and Class Members may seek injunctive relief and statutory damages of $2,500 per violation.

**B.      Background of the California Confidentiality of Medical Information Act**

31.     Pursuant to the California Confidentiality of Medical Information Act ("CMIA"), a "provider of health care . . . shall not disclose medical information regarding a patient of the provider of health care . . . without first obtaining an authorization, except as provided in subdivision (b) or (c)." Cal Civ. Code § 56.10(a).[1] "An authorization for the release of medical information . . . shall be valid if it:

> (a) Is handwritten by the person who signs it or is in a typeface no smaller than 14-point type.
>
> (b) Is clearly separate from any other language present on the same page and is executed by a signature which serves no other purpose than to execute the authorization.
>
> (c) Is signed and dated . . .
>
> (d) States the specific uses and limitations on the types of medical information to be disclosed.
>
> (e) States the name or functions of the provider of health care, health care service plan, pharmaceutical company, or contractor that may disclose the medical information.
>
> (f) States the name or functions of the persons or entities authorized to receive the medical information.
>
> (g) States the specific uses and limitations on the use of the medical information by the persons or entities authorized to receive the medical information.
>
> (h) States a specific date after which the provider of health care, health care service plan, pharmaceutical company, or contractor is no longer authorized to disclose the medical information.
>
> (i) Advises the person signing the authorization of the right to receive a copy of the authorization.

Cal. Civ. Code § 56.11.

---

[1] Subdivisions (b) and (c) are not relevant to this case but permit the disclosure of medical information in situations where a government investigation or lawsuit is taking place. For example, GoodRx could bypass the authorization requirement if patient medical information was requested pursuant to a lawful court order or by a party to a proceeding before a court or administrative agency pursuant to a subpoena. *See* Cal. Civ. Code §§ 56.10(b)(3) and 56.10(b)(6).

32.     Moreover, a health care provider that maintains information for purposes covered by the CMIA is liable for negligent disclosures that arise as the result of an affirmative act—such as implementing a system that records and discloses online patients' personally identifiable information and protected health information.  Cal. Civ. Code § 56.36(c).[2]  Similarly, if a negligent release occurs and medical information concerning a patient is improperly viewed or otherwise accessed, the individual need not suffer actual damages.  Cal. Civ. Code § 56.36(b).

33.     "In addition to any other remedies available at law, any individual may bring an action against any person or entity who has negligently released confidential information or records concerning him or her in violation of this part, for either or both of the following: [¶] (1) ... nominal damages of one thousand dollars ($1,000).  In order to recover under this paragraph, it shall not be necessary that the plaintiff suffered or was threatened with actual damages. [¶] (2) The amount of actual damages, if any, sustained by the patient."  *Sutter Health v. Superior Ct.*, 227 Cal. App. 4th 1546, 1551, 174 Cal. Rptr. 3d 653, 656 (2014) (quoting Cal. Civ. Code § 56.36(b).

## C.     The GoodRx Platform

### 1.     Background On GoodRx

34.     GoodRx was originally founded in 2011 as a prescription coupon company.  The company has since expanded to provide several different categories of services, including telehealth and informational material about health conditions and medications.

35.     To access these services, users must create an account with GoodRx by providing their name, email address, and date of birth.  To obtain a GoodRx "Prescription Savings Card," which can be used for discounts on prescriptions at over 70,000 pharmacies, users must provide their name, home address, and email address.

36.     Users can search by medication name and local pharmacy on the GoodRx Platform to receive a personalized GoodRx Coupon that will provide a discount on that specific medication.

---

[2] "Every provider of health care ... who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall do so in a manner that preserves the confidentiality of the information contained therein. Any provider of health care ... who negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to the remedies and penalties provided under subdivisions (b) and (c) of Section 56.36."  Cal. Civ. Code § 56.101, subd. (a).

1   This Coupon can be printed, texted, or emailed to the user for use at checkout.  When a user shows

2   the Coupon, GoodRx obtains a record of this purchase that includes the user's name, date of birth,

3   and relevant prescription information.

4        37.    GoodRx also advertises, distributes, and sells telehealth services, branded as

5   "GoodRx Care" and "HeyDoctor."  These services are only offered to users who provide further

6   personal information, including their name, email address, phone number, biological sex, and

7   current address.  Users must then select the type of treatment they are seeking, such as urinary tract

8   infection, erectile disfunction, anxiety, depression, acne treatment, birth control, or short-term

9   medication refills.  Depending on the treatment or the prescription sought, users are required to

10   either complete an online consultation and enter information about their symptoms and medication

11   history, or schedule a visit with a provider.  Payment information must be provided for these

12   services.

13        38.    When a medical professional prescribes a medication during a telehealth

14   appointment through GoodRx Care, GoodRx is able to prompt the user to fill the prescription using

15   a GoodRx discount coupon, allowing GoodRx to market and benefit from both of its service

16   platforms at once.

17        39.    GoodRx additionally offers "GoodRx Gold," a paid monthly subscription service

18   that combines GoodRx's telehealth and prescription coupon services.  GoodRx claims that this

19   membership can provide users with access to over 1,000 prescriptions at less than $10, and arrange

20   visits with healthcare providers at just $19.  GoodRx Gold users can also use this service to keep

21   track of their medication purchase history, including the medication name, purchase date, dosage,

22   pharmacy, and prescriber.

23            **2.    GoodRx's False Promises About Sharing Information**

24        40.    In connection with the advertising and sale of GoodRx's goods and services,

25   GoodRx has disseminated, or caused to be disseminated, false and deceptive statements about

26   GoodRx's use and disclosure of health and personal information, including privacy policies on the

27   GoodRx Platform.

28

41.     GoodRx has itself acknowledged that the information it collects from its users is sensitive, and promised users that GoodRx would treat their information in accordance with its privacy policies.

42.     GoodRx's privacy policy, in describing its use of third-party tracking tools, assured users that GoodRx would never disclose personal health information to advertisers or any third parties.  Between at least October 2017 through March 2019, GoodRx promised that it would "never provide advertisers or any other third parties any information that reveals a personal health condition or personal health information."

43.     GoodRx also promised users that it "rarely shares personal health information with third parties.  And it promised that when such information would be shared, it "ensures that these third parties are bound to comply with federal standards as to how to treat 'medical data' that is linked with [a user's] name, contact information and other personal identifiers."  This promise appeared in GoodRx's privacy policy between at least October 2017 and October 2019.

44.     During that time frame GoodRx additionally assured users that it would use "personal medical data," such as information about prescription drugs, only in "limited cases" to fulfill services that users requested.  The privacy policy listed examples of these limited cases, including to text or email GoodRx Coupons to users, to provide prescription drug price alerts, and to otherwise contact users directly.

45.     Between October and December 2019, GoodRx promised that when it does "disclose your personal information in conjunction with your specific medical information, GoodRx takes steps such that these third parties are subject to confidentiality obligations."

46.     Further, beginning in or around March 2019, GoodRx promised users that it "adheres to Digital Advertising Alliance principles."  The Digital Advertising Alliance ("DAA") is an independent organization that establishes and enforces self-regulatory principles relating to privacy and digital advertising.  The DAA provides that entities "should not collect and use … pharmaceutical prescriptions, or medical records about a specific individual for Online Behavioral Advertising without Consent," consent being defined by the DAA as "an individual's action in

response to a clear, meaningful and prominent notice regarding the collection and use of data for Online Behavioral Advertising purposes."

47. GoodRx's policies regarding personal contact information were similar between at least October 2017 and March 2020, in that it told users that it would share personal contact information only to provide services directly to users, to comply with the law or legal process, to protect and defend GoodRx's rights or property, to act in an emergency to protect someone's safety, in the case of a merger, acquisition, or reorganization, to securely store and process data, and to handle customer requests.

48. GoodRx's HeyDoctor privacy policy made similar promises, promising users between October 2018 and July 2020 that users' information would only be shared to provide access to telehealth services and that GoodRx would obtain users' consent before disclosing it for any other reason. HeyDoctor also displayed a HIPPA seal on its website, representing that its services complied with HIPPA regulations, including the prohibition against sharing health information without written authorization from the user.

49. GoodRx's co-CEO, Doug Hirsch, took these promises a step further—to the Twitter platform. In a December 14, 2019 tweet, Hirsch stated publicly: "We don't sell information and we never have. People can use GoodRx without giving us any information. Any information we do receive is stored under the same guidelines as any health entity."

50. Later that same day, Hirsch again bolstered the idea that users' sensitive information would never be shared, tweeting: "I think it's important to mention that we started GoodRx to help Americans, not gather data or exploit anyone."

51. Based on all of GoodRx's representations regarding the protection of sensitive data, and the fact that GoodRx is a medical platform, users like Plaintiff and Class members expected their personal health information to remain just that: personal, private, and confidential.

52. Unfortunately, GoodRx's constant assurances regarding privacy proved false. GoodRx not only disclosed but allowed third parties to intercept highly sensitive personal and medical information about its users that Plaintiff and Class members provided to the GoodRx

Platform, including their personal identifying information, prescriptions, and other health information.

53.     GoodRx knew that it disclosed and allowed third parties to intercept its users' sensitive personal information, including health data.  Specifically, GoodRx integrated third party tracking tools from the Tracking Defendants into its websites and mobile applications.  These tracking tools (pixels and SDKs) collect and send data to third parties so they can provide advertising, data analytics, or other business services to the owner of the website or mobile app.  The information sent can include users' contact information, persistent identifiers, location information, and "Events Data," which is information about users' activities while using a website or mobile app.

54.     GoodRx tracked and shared "Standard Events," which are records of routine website or app functions, such as the fact that a user launched or closed a mobile app or website.  GoodRx also tracked and shared "Custom Events," which are customized records of website or mobile app interactions unique to the GoodRx user experience.  Whereas Standard Events have standardized titles that are applicable to any website or mobile app (such as "Add to Wishlist"), Custom Events have unique, customized names.  Rather than giving its Custom Events anonymous names, such as "Event_1," GoodRx chose descriptive titles that conveyed health information about its users.  For example, GoodRx created Custom Events with names like "Drug Name" and "Drug Category" that tracked and shared the prescription medication and health condition(s) associated with each unique GoodRx Coupon that users accessed.  As a result, at times, when GoodRx shared a Custom Event, it was sharing its users' health information.  It then used this information to categorize users based on the medical condition they had or medication they used to serve targeted advertisements related to those conditions and treatment.

55.     This information was shared with at least the Tracking Defendants, and at least a dozen other companies.

**D.     GoodRx Shared Sensitive Information With Meta**

56.     GoodRx configured a Facebook tracking pixel (the "Meta Pixel") on its GoodRx Platform in 2017.  The Meta Pixel is a snippet of code embedded on a third-party website that

tracks users' activity while they navigate through a particular website.  Through this technology, Meta intercepts each page a user visits, what buttons they click, as well as specific information they input into the website and what they searched.  This data is often associated with the individual user's Facebook account, so if the user is logged into their Facebook account, Meta is able to link information tracked by the Meta Pixel to that specific individual.

57.     The Meta Pixel can be utilized to get insights about how people use specific websites, and to track the effectiveness of advertising on a specific website.  The data intercepted through the Meta Pixel can also be used by Meta to improve its personalized content delivery, advertising network, and machine learning algorithms, including by improving its ability to identify and target users.

58.     GoodRx configured the Meta Pixel on the GoodRx Platform to share Standard and Custom Events, which conveyed user health information to Meta.  This included the name of the medication for which users accessed a GoodRx Coupon, the website URL, which in many cases included a medication name, the health condition related to the medication, the medication quantity, the pharmacy name, and the user's city, state, and zip code.  The Meta Pixel also collected website microdata with additional information about the prescription medication and health condition(s) for which users accessed GoodRx Coupons, and the user's IP address.

59.     GoodRx configured the Meta Pixel to automatically share with Meta additional personal information, including a user's name, email address, phone number, city, state, zip code, and gender starting in May 2019.  GoodRx shared personal and health information with Meta through the Meta Pixel beginning in December 2019, when it configured certain of its URL addresses to embed user name, email address, date of birth, phone number, and sometimes prescription medication name.  These URLs were shared with Meta.

60.     Meta offers a mobile version of the Meta Pixel, an SDK, to app developers.  Meta's SDK allows app developers to similarly track events, such as when someone installs your app or completing a purchase.  By tracking these events, developers can measure ad performance and build audiences for ad targeting.

61.     At the time Plaintiff used the GoodRx Platform, he maintained active Facebook and Instagram accounts.  Plaintiff accessed the GoodRx Platform from the same device he used to visit Facebook and Instagram, and Meta associated the data it collected about him from the GoodRx Platform with his Facebook and Instagram accounts and other personally identifiable information.

62.     Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain prescriptions.  This information was disclosed to and intercepted by Meta.  Plaintiff did not consent to the interception or disclosure of his data to Meta.  GoodRx's disclosure, and Meta's interception, of Plaintiff's personally identifiable information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the Confidentiality of Medical Information Act ("CMIA") and California Invasion of Privacy Act ("CIPA").

### E.     GoodRx Shared Sensitive Information With Google

63.     Google, one of the most valuable publicly traded companies in the world, makes the majority of its revenue in advertising dollars.  Google offers several analytics products, including SDKs and a tracking pixel, which exist solely to help drive ad revenue.  These products also improve the company's advertising network and capabilities by providing more wholesome profiles and data points on individuals.

64.     Google additionally uses the data collected through its analytics tools to improve its ad targeting capabilities and data points on users.

65.     GoodRx uses Google's tracking technology, such as an SDK or pixel, on the GoodRx Platform.  As a result, GoodRx disclosed and Google intercepted users' interactions on the GoodRx Platform.  Google received at least users' health information, including what GoodRx Coupons they accessed or used.

66.     Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain his prescriptions.  This information was disclosed to and intercepted by Google.  Plaintiff did not consent to the interception or disclosure of his data to Google.  GoodRx's disclosure, and Google's interception, of Plaintiff's personally identifiable

information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the CMIA and CIPA.

**F.      GoodRx Shared Sensitive Information With Criteo**

67.     Criteo, a digital advertising company that focuses on serving personalized advertisements, offers data collection and advertising technology to tother companies with snippets of code similar to the Meta Pixel.  Through its technology, Criteo is able to create "audiences" that group users based on a specific data point or similarity between them.  Companies like GoodRx can use this information to employ targeted advertising.

68.     GoodRx uses Criteo's tracking technology, such as an SDK or pixel, on the GoodRx Platform.  As a result, GoodRx disclosed and Criteo intercepted users' interactions on the GoodRx Platform.  Criteo received at least users' health information, including what GoodRx Coupons they accessed or used.

69.     Plaintiff provided his personally identifiable information, health information, and other sensitive information to GoodRx to obtain his prescriptions.  This information was disclosed to and intercepted by Criteo.  Plaintiff did not consent to the interception or disclosure of his data to Criteo.  GoodRx's disclosure, and Criteo's interception, of Plaintiff's personally identifiable information, health data, and other highly sensitive information without his consent is an invasion of privacy and violates several laws, including the CMIA and CIPA.

**G.      Defendants Used GoodRx Users' Data**

70.     Defendant GoodRx monetized and used the data collected from GoodRx users to serve personalized advertisements on social media platforms, such as Facebook and Instagram. Through Meta's "Ads Manager," a self-serve digital advertising tool, and its "Custom Audiences" ad-targeting feature, GoodRx used the information it shared with Meta to identify its users who had Facebook and Instagram accounts.  GoodRx then grouped the resulting list of users into Custom Audiences that it categorized based on health information (such as an audience of users who took a specific medication), gave its Custom Audiences descriptive titles that in some cases contained medication names or health conditions, and targeted these users with health-related advertisements

1   that marketed GoodRx's services.  In some cases, these targeted advertisements featured specific

2   medications.

3   71.   GoodRx was able to create these audiences through its use of Tracking Defendants'

4   software employed on the GoodRx Platform.  GoodRx used Events Data and personal identifiers

5   shared through each pixel to create audiences of users who had accessed or used a GoodRx Coupon

6   for a particular prescription medication, or who had accessed a HeyDoctor treatment page for a

7   specific health condition.  GoodRx targeted these users with health-related advertisements.

8   72.   GoodRx was also able to create audiences based on medication purchase data.

9   GoodRx compiled lists of its users who had used a GoodRx Coupon to purchase particular

10   medications, and uploaded their email addresses, phone numbers, and mobile identifiers to Ads

11   Manager to identify those individuals on Facebook or Instagram.  GoodRx then created

12   medication-specific advertising audiences consisting of these users, named each Custom Audience

13   according to the medication they had purchased, and targeted these users with health-related

14   advertisements.

15   73.   GoodRx ran these targeted advertising campaigns on Facebook and Instagram

16   between 2017 and 2020 based on personal health information.

17   74.   For instance, in August 2019, GoodRx ran a campaign using Meta's services based

18   on users who had purchased prescriptions for Lisinopril, Azithromycin, Atorvastatin, or

19   Prednisone, and named each Custom Audience according to the medication purchased: "lisinopril

20   claims," "atorvastatin claims," "azith claims" and "pred claims."

21   75.   Between August 2017 and March 2018, GoodRx's campaign targeted users who had

22   visited drug pages for five specific medications: Losartan, Amlodipine, Zolpidem, Topiramate, and

23   Quetiapine.

24   76.   Between August 31 and October 31, 2018, GoodRx's campaign targeted users who

25   had visited HeyDoctor Treatment Pages relating to specific health conditions.  It named each

26   Custom Audience by the health condition corresponding to the Treatment Page visited, including

27   "Acne," "Birth Control," "Blood Type," "Cold Sore," "Eyelash," "Female condom," "Hair Loss,"

28

1    "Hepatitis C," "HIV," "Metabolism," "Pre Diabetes," "Pregnancy," "Smoking," "Sinus," "TB,"

2    "UTI," and "Vitamin D."

3          77.    Between November 1, 2018 and February 20, 2019, GoodRx's campaign targeted

4    users who previously visited HeyDoctor's Treatment Page(s) relating to HeyDoctor's sexually

5    transmitted disease services.  The targeted advertisements promoted HeyDoctor's STD testing

6    services.

7          78.    Between July 22 and August 4, 2019, GoodRx's campaign targeted users who had

8    viewed a GoodRx Coupon for Lipitor, Lisinopril, Neurontin, Prednisone, and Zithromax.  The

9    targeted advertisements featured these prescriptions.

10         79.    Between November 1 and December 6, 2019, GoodRx's campaign targeted users

11   who viewed HeyDoctor's Treatment Page for erectile dysfunction.  The targeted advertisements

12   promoted obtaining prescriptions for erectile dysfunction through HeyDoctor.

13         80.    Between January 9 and February 25, 2020, GoodRx targeted users who had viewed

14   a GoodRx Coupon for Cialis or Sildenafil.  The targeted advertisements promoted HeyDoctor's

15   services.

16         81.    Between January 15 and 17, 2020, GoodRx targeted users who viewed a GoodRx

17   Coupon for birth control medication.  The targeted advertisements promoted HeyDoctor's services.

18         82.    Between February 3 and 8, 2020, GoodRx targeted users who accessed a GoodRx

19   Coupon for Cialis or Sildenafil.  The targeted advertisements promoted GoodRx Coupons for

20   Viagra.

21         83.    The above are just some of the examples of the multitude of extreme abuses by

22   GoodRx and the Tracking Defendants of Plaintiff's and Class members' sensitive data.

23                          <u>**CLASS ACTION ALLEGATIONS**</u>

24         84.    Class Definition: Pursuant to Section 382 of the Code of Civil Procedure, Plaintiff

25   brings this action on behalf of himself and other similarly situated individuals (the "Class"),

26   defined as California citizens who, during the class period, used GoodRx and had their personally

27   identifiable information or protected health information improperly disclosed to third parties,

28   including the Tracking Defendants.

85.     Plaintiff reserves the right to modify the class definition or add sub-classes as necessary prior to filing a motion for class certification.

86.     The "Class Period" is the time period beginning on the date established by the Court's determination of any applicable statute of limitations, after consideration of any tolling, concealment, and accrual issues, and ending on the date of entry of judgement.

87.     Excluded from the Class are Defendants, any affiliate, parent, or subsidiary of Defendants; any entity in which Cedars-Sinai has a controlling interest; any officer director, or employee of Defendants; any successor or assign of Defendants; anyone employed by counsel in this action; any judge to whom this case is assigned, his or her spouse and immediate family members; and members of the judge's staff.

88.     <u>Numerosity/Ascertainability</u>.  Members of the Class are so numerous that joinder of all members would be unfeasible and not practicable.  The exact number of Class members is unknown to Plaintiff at this time; however, it is estimated that there are hundreds of thousands of individuals in the Class.  The identity of such membership is readily ascertainable from GoodRx's records.

89.     <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class because Plaintiff used the GoodRx Platform and had his personally identifiable information and protected health information disclosed to the Tracking Defendants without his express written authorization or knowledge.  Plaintiff's claims are based on the same legal theories as the claims of other Class members.

90.     <u>Adequacy</u>.  Plaintiff is fully prepared to take all necessary steps to represent fairly and adequately the interests of the Class Members.  Plaintiff's interests are coincident with, and not antagonistic to, those of the members of the Class.  Plaintiff is represented by attorneys with experience in the prosecution of class action litigation generally and in the emerging field of digital privacy litigation specifically.  Plaintiff's attorneys are committed to vigorously prosecuting this action on behalf of the members of the Class.

91.     <u>Common Questions of Law and Fact Predominate/Well Defined Community of Interest.</u>  Questions of law and fact common to the members of the Class predominate over

questions that may affect only individual members of the Class because Defendant has acted on grounds generally applicable to the Class.  Such generally applicable conduct is inherent in Defendants' wrongful conduct.  Questions of law and fact common to the Classes include:

(a)     Whether Defendants violated Plaintiff's and Class members' privacy rights;

(b)     Whether Defendants' acts and practices violated the Common Law Invasion of Privacy;

(c)     Whether Defendants were unjustly enriched;

(d)     Whether Defendants' acts and practices violated California's Confidentiality of Medical Information Act, Civil Code §§ 56, *et seq*.;

(e)     Whether Defendants' acts and practices violated the California Invasion of Privacy Act, Cal. Penal Code §§ 630, *et seq*.;

(f)     Whether Plaintiff and Class members are entitled to damages under CIPA, the CMIA, or any other relevant statute;

(g)     Whether Plaintiff and the Class members are entitled to equitable relief, including but not limited to, injunctive relief, restitution, and disgorgement; and

(h)     Whether Plaintiff and the Class members are entitled to actual, statutory, punitive or other forms of damages, and other monetary relief.

92.     <u>Superiority</u>.  Class action treatment is a superior method for the fair and efficient adjudication of the controversy.  Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, or expense that numerous individual actions would engender.  The benefits of proceeding through the class mechanism, including providing injured persons or entities a method for obtaining redress on claims that could not practicably be pursued individually, substantially outweighs potential difficulties in management of this class action.  Plaintiff knows of no special difficulty to be encountered in litigating this action that would preclude its maintenance as a class action.

## <u>COUNT I</u>
### Violation Of The California Invasion Of Privacy Act ("CIPA")
### Cal. Penal Code § 631

93.     Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein and brings this count individually and on behalf of the members of the Class.

94.     The California Invasion of Privacy Act ("CIPA") is codified at Cal. Penal Code §§ 630 to 638.  The Act begins with its statement of purpose, the major takeaway being: "to protect the right of privacy of the people of this state."  CIPA § 630.

95.     California penal Code § 631 imposes liability on any person who "by means of any machine, instrument, contrivance, or in any other manner" (1) "intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument," (2) "willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [the state of California]," (3) "uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained," or (4) "aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section."

96.     Defendants are persons for purposes of § 631.

97.     Defendants GoodRx, Meta, and Google maintain their principal places of business in California, where they designed, contrived, agreed, conspired, effectuated, and/or received the interception and use of the contents of Plaintiff and Class members' communications. Additionally, Google and Meta have adopted California substantive law to govern their relationship with users.

98.     The Tracking Defendants' technology (i.e., SDKs and pixels), Plaintiff's and Class members' browsers and mobile applications, and Plaintiff's and Class members' computing and mobile devices are a "machine, instrument, contrivance, or . . . other manner."

99.     At all relevant times, Defendant GoodRx aided, agreed with, and conspired with the

Tracking Defendants to track and intercept Plaintiff's and Class Members' personal and sensitive health information while accessing the GoodRx Platform.  These communications were intercepted without the authorization and consent of the Plaintiff and Class Members.

100.    The Tracking Defendants, intentionally and without the consent of Plaintiff and Class members, read or attempt to read, or learn the contents or meaning of Plaintiff and Class members' communications to GoodRx while the communications are in transit or passing over any wire, line or cable, or were being received at any place within California when it intercepted Plaintiff and Class members' communications and data with GoodRx, which is headquartered in California, in real time.

101.    The Tracking Defendants used or attempted to use the communications and information they received through their tracking technology, including to supply analytics and advertising services.

102.    By incorporating the Tracking Defendants' technology on its Platform, GoodRx aided, agreed with, employed, and conspired with the Tracking Defendants to carry out the wrongful conduct alleged herein.

103.    The interception of Plaintiff's and Class members' communications was without authorization and consent from the Plaintiff and Class members.  Accordingly, the interception was unlawful and tortious.

104.    As a result of the above violations, Defendants are liable to Plaintiff and other Class Members in the amount of $5,000 dollars per violation or three times the amount of actual damages (the greater of these two options).  Additionally, Section 637.2 specifically states that "[it] is not a necessary prerequisite to an action pursuant to this section that the plaintiff has suffered, or be threatened with, actual damages."

105.    Under the statute, Defendants are also liable for reasonable attorney's fees, and other litigation costs, injunctive and declaratory relief, and punitive damages in an amount to be determined by a jury, but sufficient to prevent the same or similar conduct by Defendants in the future.

1

2

### COUNT II
### Violation Of CIPA
### Cal. Penal Code § 632

3
106.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set

4
forth herein and brings this count individually and on behalf of the members of the Class.

5
107.    Plaintiff brings this claim individually and on behalf of the members of the

6
proposed Classes against Defendants.

7
108.    CIPA § 632(a) prohibits an entity from:

8
9
10
11
[I]ntentionally and without the consent of all parties to a confidential communication, use[] an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio.

12
109.    Plaintiff and Class members' communications to GoodRx, including their sensitive

13
medical information including information concerning medications they were taking or were

14
prescribed, their medical histories, allergies, and answers to other health-related questions, were

15
confidential communications for purposes of § 632, because Plaintiff and Class members had an

16
objectively reasonable expectation of privacy in this data.

17
110.    The Tracking Defendants' tracking technology (i.e., SDKs and pixels) are all

18
electronic amplifying or recording devices for purposes of § 632.

19
111.    At all relevant times, Defendants intentionally used the Tracking Defendants'

20
technology on the GoodRx Platform to eavesdrop upon and record the confidential

21
communications of Plaintiff and Members of the Classes in violation of § 632 of CIPA.

22
112.    Plaintiff and members of the Classes did not consent to any of Defendants' actions.

23
Nor have Plaintiff or members of the Classes consented to Defendants' intentional use of an

24
electronic amplifying or recording device to eavesdrop upon and record their confidential

25
communications.

26
113.    The violation of CIPA § 632(a) constitutes an invasion of privacy sufficient to

27
confer Article III standing.

28

114.     Pursuant to Cal. Penal Code § 637.2, Plaintiff and members of the Classes have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Defendants' violations of CIPA § 632(a).

## COUNT III
### Common Law Invasion of Privacy

115.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

116.     The right to privacy in California's constitution creates a right of action against private entities such as Defendants.

117.     Plaintiff's and Class members' expectation of privacy is deeply enshrined in California's Constitution.  Article I, section I of the California Constitution provides: "All people are by nature free and independent and have inalienable rights.  Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property and pursuing and obtaining safety, happiness, and privacy."

118.     The phrase "and privacy" was added in 1972 after voters approved a proposed legislative constitutional amendment designated as Proposition 11.  Critically, the argument in favor of Proposition 11 reveals that the legislative intent was to curb businesses' control over the unauthorized collection and use of consumers' personal information, stating:

> The right of privacy is the right to be left alone. … It prevents government and business interests from collecting and stockpiling unnecessary information about us and from misusing information gathered for one purpose in order to serve other purposes or to embarrass us.  Fundamental to our privacy is the ability to control circulation of personal information.  This is essential to social relationships and personal freedom.

119.     The principal purpose of this constitutional right was to protect against unnecessary information gathering, use, and dissemination by public and private entities, including Defendants.

120.     To plead a California constitutional privacy claim, a plaintiff must show an invasion of (1) a legally protected privacy interest; (2) where the plaintiff had a reasonable expectation of privacy in the circumstances; and (3) conduct by the defendant constituting a serious invasion of privacy.

121.    As described herein, Defendants have intruded upon legally protected privacy interests, including the California Constitution, which guarantees Californians the right to privacy; the CIPA; the CMIA; and HIPPA.

122.    Plaintiff and Class members reasonably expected the personal and sensitive information they shared with GoodRx to remain private and confidential given the nature of the GoodRx Platform, which is primarily used to receive medical advice, treatment, prescriptions, and prescription coupons.

123.    Plaintiff Class members had a reasonable expectation of privacy under the circumstances in that Plaintiff Class members could not reasonably expect GoodRx and the Tracking Defendants would commit acts in violation of federal and state civil and criminal laws; and GoodRx affirmatively promised users (including Plaintiff and Class members) it would not track or disseminate their communications or access their computer devices or web-browser when they sent or received sensitive or otherwise protected information, like their personally identifiable information or sensitive health information.

124.    Defendants' actions constituted a serious invasion of privacy in that their conduct invaded the privacy rights of Americans (including Plaintiff and Class members) without their consent and further violated Plaintiff's and Class members' reasonable expectation of privacy via Tracking Defendants' review, analysis, and subsequent monetization and use of Plaintiff's and Class members' personally identifiable information, health information, and other sensitive data that Plaintiff and Class members considered private and confidential.

125.    Committing these criminal acts against hundreds of thousands of Americans constitutes an egregious breach of social norms that is highly offensive.

126.    The surreptitious and unauthorized tracking of the internet communications of hundreds of thousands of Americans, particularly where, as here, they have taken measures to ensure their privacy, constitutes an egregious breach of social norms that is highly offensive.

127.    Defendants' intentional intrusions into Plaintiff's and Class members' private data and their accessing devices and web-browsers was highly offensive to a reasonable person in that Defendants violated federal and state criminal and civil laws designed to protect individual privacy.

128.     The taking of personally identifiable information from tens of millions of Americans through deceit is highly offensive behavior.

129.     Following Defendants' unauthorized interception of the sensitive and valuable personal information, the subsequent analysis and use of those identifiers and event data to create targeted audiences of advertisements, comprising of Plaintiff, Class members, and consumers violated their reasonable expectations of privacy.

130.     Plaintiff McDaniel and Sub-Class members have been damaged by Facebook's invasion of their privacy and are entitled to just compensation and injunctive relief.

**<u>COUNT IV</u>**
**Common Law Privacy – Intrusion Upon Seclusion**

131.     Plaintiff hereby incorporates the paragraphs contained above as if fully set forth herein.

132.     Plaintiffs asserting claims for intrusion upon seclusion must plead (1) intrusion into a private place, conversation, or matter; (2) in a manner highly offensive to a reasonable person.

133.     GoodRx's disclosure of Plaintiff's and Class members' sensitive data, including personally identifiable information, health information, prescription requests and other interactions on the GoodRx Platform, to third parties like the Tracking Defendants constitutes an intentional intrusion upon Plaintiff's and Class members' solitude or seclusion.

134.     Plaintiff and Class members had a reasonable expectation of privacy in the health information and other personal data that GoodRx disclosed to third parties.  Plaintiff's health information, prescription requests, and other interactions with the GoodRx Platform are inherently sensitive in nature.  Plaintiff and Class members reasonably expected this information would remain private and confidential and would not be disclosed to third parties without their consent.

135.     This expectation is especially heightened given GoodRx's consistent representations to users that this information would be safeguarded and not disclosed to third parties like Meta, Google, and Criteo.

136.    GoodRx promised that it would only use personal medical data such as prescription drug information in "limited cases" as necessary to fulfill the user's request.  For instance, to text or email GoodRx Coupons.

137.    Given these representations, and the nature of the data GoodRx received, Plaintiff and Class members had a reasonable expectation of privacy in their data relating to their use of the GoodRx Platform and expected this information would not be disclosed.

138.    Plaintiff and Class members did not consent to, authorize, or know about GoodRx's intrusion at the time it occurred.  Accordingly, Plaintiff and Class members never agreed that GoodRx could disclose their data to third parties.

139.    The surreptitious disclosure of sensitive data, including personally identifiable information and health information from millions of individuals was highly offensive because it violated expectations of privacy that have been established by social norms.  Privacy polls and studies show that the overwhelming majority of Americans believe one of the most important privacy rights is the need for an individual's affirmative consent before personal data is collected or shared.

140.    The offensiveness of this conduct is all the more apparent because GoodRx's disclosure of this information was conducted in secret in a manner that Plaintiff and Class members would be unable to detect through the incorporation of highly technical SDKs and pixels that was contrary to the actual representations made by GoodRx.

141.    As a result of GoodRx's actions, Plaintiff and Class members have suffered harm and injury, including but not limited to an invasion of their privacy rights.

142.    Plaintiff and Class members have been damaged as a direct and proximate result of GoodRx's invasion of their privacy and are entitled to just compensation, including monetary damages.

143.    Plaintiff and Class members seek appropriate relief for that injury, including but not limited to damages that will reasonably compensate Plaintiff and Class members for the harm to their privacy interests as well as a disgorgement of profits made by GoodRx as a result of its intrusions upon Plaintiff's and Class members' privacy.

144.    Plaintiff and Class members are also entitled to punitive damages resulting from the malicious, willful, and intentional nature of GoodRx's actions, directed at injuring Plaintiff and Class members in conscious disregard of their rights. Such damages are needed to deter Defendants from engaging in such conduct in the future.

145.    Plaintiff also seeks such other relief as the Court may deem just and proper.

### COUNT V
### Violation of California Confidentiality of Medical Information Act ("CMIA")
### Civil Code Section 56.06

146.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

147.    GoodRx is a provider of healthcare under Cal. Civ. Code Section 56.06, subdivisions (a) and (b), because the GoodRx Platform maintains medical information and offers software to consumers that is designed to maintain medical information for the purposes of allowing its users to manage their information or make the information available to a heath care provider, or for the diagnoses, treatment, or management of a medical condition.

148.    GoodRx is therefore subject to the requirements of the CMIA and obligated under Section 56.06 subdivision (e) to maintain the same standards of confidentiality required of a provider of health care with respect to medical information that it maintains on behalf of users.

149.    The CMIA defines medical information to mean any "individually identifiable information" in possession of or derived from "a provider of health care, health care service plan, pharmaceutical company, or contractor regarding a patient's medical history, mental or physical condition, or treatment." As explained above, the information GoodRx maintained and disclosed is medical information because it is identifiable information relating to patient's medical histories, conditions, treatments, and prescriptions.

150.    GoodRx violated Cal. Civ. Code Section 56.06(e) because it did not maintain the confidentiality of users' medical information.  GoodRx disclosed to third parties Plaintiff's and

1  Class members' medical information without consent, including information concerning

2  medications they were taking or were prescribed.

3      151.    GoodRx shared this identifiable information with third parties, including Meta,

4  Google, and Criteo and whose primary business includes selling advertisements, analytics, or other

5  insights based on the data they obtain about individuals, and using such data to improve their

6  products, services, and algorithms.

7      152.    GoodRx knowingly and willfully disclosed medical information without consent to

8  Tracking Defendants for financial gain. Namely, to sell more products, advertise, obtain analytics,

9  and improve the GoodRx Platform, in violation of Cal. Civ. Code Section 56.06(e).  GoodRx's

10 conduct was knowing and willful as they were aware that Tracking Defendants would obtain all

11 user data input while using their sites, yet intentionally embedded Tracking Defendants' code

12 anyway.

13     153.    At the very least, GoodRx negligently disclosed medical information to Tracking

14 Defendants in violation of Cal. Civ. Code Section 56.06(e).

15     154.    Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of

16 $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory

17 damages pursuant to Cal. Civ. Code Section 56.36(c); and reasonable attorneys' fees and other

18 litigation costs reasonably incurred.

19                          **COUNT VI**
                          **Violation of CMIA**
20                    **Civil Code Section 56.101**

21     155.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this

22 Complaint as if fully set forth herein and brings this claim individually and on behalf of the

23 proposed Class.

24     156.    Cal. Civ. Code Section 56.101 (a) requires that every provider of health care "who

25 creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall

26 do so in a manner that preserves the confidentiality of the information contained therein."

27

28

157.    Any health care provider who "negligently creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information shall be subject to remedies and penalties provided under subdivisions (b) and (c) of Section 56.36[.]"

158.    GoodRx is a provider of health care who creates, maintains, preserves, stores, abandons, destroys, or disposes of medical information.

159.    GoodRx failed to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information contained therein because it disclosed to Tracking Defendants, Plaintiff's, and Class members' medical information, including information concerning medications they were taking or were prescribed.

160.    GoodRx's failure to maintain, preserve, and store medical information in a manner that preserves the confidentiality of the information was, at the least, negligent and violates Cal. Civ. Code Section 56.101 (a).

161.    Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory damages pursuant to Cal. Civ. Code Section 56.36(c); and reasonable attorneys' fees and other litigation costs reasonably incurred.

**COUNT VII**
**Violation of CMIA**
**Civil Code Section 56.10**

162.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

163.    Under the California Confidentiality of Medical Information Act section 56.10 ("CMIA"), providers of health care are prohibited from disclosing medical information relating to their patients, without a patient's authorization.  Medical information refers to "any individually identifiable information, in electronic or physical form, in possession of or derived from a provider of health care... regarding a patient's medical history, mental or physical condition, or treatment.

1   'Individually Identifiable' means that the medical information includes or contains any element of

2   personal identifying information sufficient to allow identification of the individual...".

3   164.    Plaintiff and Class Members are patients, and, as a health care provider, GoodRx

4   has an ongoing obligation to comply with the CMIA's requirements.

5   165.    GoodRx disclosed medical information without first obtaining authorization when it

6   disclosed to third parties Tracking Defendants Plaintiff's and Class members' data, including

7   personally identifiable information and prescription requests. No statutory exception applies.

8   166.    GoodRx knowingly and willfully disclosed medical information without consent to

9   Tracking Defendants for financial gain.  Namely, to market and advertise its services, or to allow

10   others to market and advertise its services, in violation of Cal. Civ. Code Section 56.10,

11   subdivision (a).

12   167.    At the very least, GoodRx negligently disclosed medical information in violation of

13   Cal. Civ. Code Section 56.10, subdivision (a) through the unauthorized disclosure of Plaintiff's and

14   Class members' sensitive medical information.

15   168.    Accordingly, Plaintiff and Class members are entitled to: (1) nominal damages of

16   $1,000 per violation; (2) actual damages, in an amount to be determined at trial; (3) statutory

17   damages pursuant to Cal. Civ. Code Section 56.35; and reasonable attorneys' fees and other

18   litigation costs reasonably incurred.

19   **COUNT VIII**
**Violation of CMIA**
20   **Civil Code Section 56.36**

21   169.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this

22   Complaint as if fully set forth herein and brings this claim individually and on behalf of the

23   proposed Class.

24   170.    Cal. Civ. Code Section 56.36(B)(3)(A) prohibits any person of entity other than a

25   licensed health care professional from knowingly or willfully obtaining medical information for

26   financial gain.

27

28

171.    Cal. Civ. Code Section 56.36(B)(5) prohibits any person or entity who is not permitted to receive medical information under the CMIA from knowingly and willfully obtaining, disclosing, or using the medical information without written authorization.

172.    The Tracking Defendants are entities who are not licensed health care professionals, and Tracking Defendants are not permitted to receive medical information under the CMIA.

173.    The Tracking Defendants violated Cal. Civ. Code Sections 56.36(B)(3)(A) and (B)(5) because they knowingly and willfully obtained medical information from the GoodRx Platform without authorization for their own financial gain.

174.    As described herein, the Tracking Defendants intentionally designed their software to intercept data from the websites and mobile applications in which they are incorporated.

175.    The Tracking Defendants knew this software was incorporated on websites and mobile applications that would consequently lead to the interception of medical information, including medical information input in the GoodRx Platform.

176.    The Tracking Defendants knowingly and willfully received this information without written authorization from Plaintiff and Class members, and did so for their own financial gain. Namely, to profit through advertising and analytics services they offer, as well as to improve their algorithms, data points, and other technologies.

177.    Pursuant to Cal. Civ. Code Section 56.36(B)(3)(A) and Cal. Civ. Code Section 56.36(B)(5), the Tracking Defendants are liable for a civil penalty up to $250,000 per violation of these sections.

**COUNT IX**
**Unjust Enrichment**

178.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

179.    Defendants received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

180.    Defendants received benefits from Plaintiff and Class members in the form of the Plaintiff's highly valuable data, including health information and personally identifiable information, that Defendants wrongfully disclosed and intercepted from Plaintiff and Class members without authorization and proper compensation.

181.    Defendants disclosed, intercepted, stored, and used this data for their own gain, providing Defendants with economic, intangible, and other benefits, including highly valuable data for analytics, advertising, and improvement of their platforms, algorithms, and advertising services.

182.    Had Plaintiff known of Defendants' misconduct, she would not have provided any of their data to Defendants or have used or paid to use the GoodRx Platform.

183.    Defendants unjustly retained these benefits at the expense of Plaintiff and Class members because Defendants' conduct damaged Plaintiff and Class members, all without providing any commensurate compensation to Plaintiff and Class members.

184.    The benefits that GoodRx derived from Plaintiff and Class members rightly belong to Plaintiff and Class members.  It would be inequitable under unjust enrichment principles in California and every other state for Defendants to be permitted to retain any of the profit or other benefits they derived from the unfair and unconscionable methods, acts, and trade practices alleged in this Complaint.

185.    Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and Class members all unlawful or inequitable proceeds that Defendants received, and such other relief as the Court may deem just and proper.

**COUNT X**
**Violation of the California Consumers Legal Remedies Act ("CLRA")**
**Cal. Civ. Code §§ 1750, *et seq.***

186.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

187.    GoodRx engaged in "unfair methods of competition and unfair or deceptive acts …
in a transaction … that result[ed] … in the sale … of goods" to Plaintiff and the Class members in
violation of Cal. Civ. Code § 1750 and Cal. Civ. Code § 1770(a)(5), (7), (9), (14), (16).

188.    For instance, GoodRx made representations that it would protect Plaintiff's privacy
interest, including promising that it would "never provide advertisers or any other third parties any
information that reveals a personal health condition or personal health information."

189.    GoodRx promised that it would only use "personal medical data" such as
prescription drug information in "limited cases" as necessary to fulfill the user's request.  For
instance, to text or email GoodRx coupons.

190.    It also represented in public tweets and by displaying the HIPPA seal that it
complied with HIPPA, which prohibits the disclosure of data for advertising and analytics without
written authorization from the user.

191.    GoodRx made these representations with no intention of living up to these
representations.  Contrary to these representations, GoodRx disclosed and allowed third parties to
intercept Good Rx users' sensitive data, including health data and personally identifiable
information.

192.    Further, GoodRx failed to disclose it secretly shared, used, and allowed third parties
to intercept Plaintiff's and Class members' sensitive data, including PII and health information.

193.    GoodRx was under a duty to disclose this information given its relationship with
GoodRx users and its exclusive knowledge of its misconduct (e.g., the technology incorporated on
the GoodRx platform, the data is disclosed and allowed third parties to intercept through this
technology, and how it and third parties used this data).

194.    Plaintiff and Class members would not have purchased, or would have paid
significantly less for, GoodRx services and products had GoodRx not made these false
representations. GoodRx profited directly from these sales, including through payment for these
services and products, and from the data disclosed and intercepted.

195.    Plaintiff, individually and on behalf of the Class, seeks an injunction requiring
GoodRx to obtain consent prior to disclosing and otherwise using Plaintiff's and Class members'

sensitive personal data and to delete the data already collected, and any other relief which the court deems proper.

## COUNT XI
### Violation of Cal. Bus. & Prof. Code §§ 17200, *et seq.*

196.    Plaintiff repeats the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein and brings this claim individually and on behalf of the proposed Class.

197.    Defendants' business acts and practices are "unlawful" under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et. seq.* ("UCL"), because, as alleged above, Defendants violated the California common law and other statutes and causes of action described herein.

198.    Defendants' business acts and practices are "unfair" under the UCL.  California has a strong public policy of protecting consumers' privacy interests, including protecting consumers' personal data.  Defendants violated this public policy by, among other things, disclosing and intercepting Plaintiff's and Class members' sensitive data, including personally identifiable information and health data, without consent.

199.    GoodRx further engaged in unfair business practices because it made material misrepresentations and omissions concerning the information that it assured users it would not share with third parties, which deceived and misled users of the GoodRx platform.

200.    Defendants' business acts and practices are also "unfair" in that they are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers. The gravity of the harm of Defendants secretly disclosing, intercepting, and misusing Plaintiff's and Class members' sensitive personal data is significant, and there is no corresponding benefit resulting from such conduct. Finally, because Plaintiff and Class members were completely unaware of Defendants' conduct, they could not have possibly avoided the harm.

201.    Defendants' business acts and practices are also "fraudulent" within the meaning of the UCL.  Defendant GoodRx disclosed, and the Tracking Defendants intercepted, a large collection of sensitive personal data, including health information and personally identifiable,

without disclosing this practice and therefore acted without users' knowledge or consent. Defendants' business acts and practices were likely to, and did, deceive members of the public including Plaintiff and Class members into believing this data was private and would not be shared with third parties.

202. GoodRx assured users that it "never provide[s] advertisers or any other third parties any information that reveals a personal health condition or personal health information."

203. GoodRx did not disclose that it would share this data with third parties, including with Tracking Defendants.

204. Such information was not kept private, as GoodRx disclosed and allowed the Tracking Defendants to intercept this data.

205. Defendants' violations were, and are, willful, deceptive, unfair, and unconscionable.

206. Had Plaintiff and Class members known their personal information, including health data and personally identifiable information, would be disclosed and intercepted, they would not have used or purchased, or would have paid significantly less for, GoodRx services and products.

207. Plaintiff and Class members have a property interest in their sensitive personal data. By surreptitiously disclosing and intercepting Plaintiff's and Class members' information, Defendants have taken property from Plaintiff and Class members without providing just or any compensation.

208. By unlawfully disclosing and intercepting this data, Defendants have taken money or property from Plaintiff and Class members.

209. For these reasons, Plaintiff seeks at least restitution and other equitable relief on behalf of himself and Class members as a result of Defendants' violations of the UCL.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

a.      For a determination that this action is a proper class action;

b.      For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

c.      For an order declaring that Defendants' conduct violates the statutes referenced

herein;

d.  For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

e.  For an award of compensatory damages, including statutory damages where available, to Plaintiff and the Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial;

f.  For punitive damages, as warranted, in an amount to be determined at trial;

g.  Ordering Defendants to disgorge revenues and profits wrongfully obtained;

h.  For prejudgment interest on all amounts awarded;

i.  For injunctive relief as pleaded or as the Court may deem proper;

j.  For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit; and

k.  For an order granting Plaintiff and Class members such further relief as the Court deems appropriate.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated:  March 2, 2023                **BURSOR & FISHER, P.A**.

By:  ___/s/ *L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
Jenna L. Gavenman (State Bar No. 348510)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
            jgavenman@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Plaintiff Jose Marquez in this action.  Plaintiff Marquez alleges he is a citizen of Salinas, California, Monterey County.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California, this 2nd day of March, 2023.

*/s/ L. Timothy Fisher*
L. Timothy Fisher